IN THE SUPREME COURT OF PENNSYLVANIA
MIDDLE DISTRICT

**TODD, C.J., DONOHUE, DOUGHERTY, WECHT, MUNDY, BROBSON, McCAFFERY, JJ.**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 90 MAP 2024 |
| | : | |
| Appellee | : | Appeal from the Order of the |
| | : | Superior Court at No. 373 MDA |
| | : | 2023 dated March 19, 2024 |
| v. | : | Reversing and Remanding the |
| | : | Order of the Bradford County Court |
| | : | of Common Pleas, Criminal |
| SCOTT LEE SUTTON, | : | Division, at No. CP-08-CR-0000613- |
| | : | 2022 dated February 8, 2023 |
| Appellant | : | |
| | : | ARGUED: October 8, 2025 |
| | | |
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 104 MAP 2024 |
| | : | |
| Appellee | : | Appeal from the Order of the |
| | : | Superior Court at No. 249 MDA |
| | : | 2023 entered on April 22, 2024, |
| v. | : | Reversing and Remanding the |
| | : | Order of the Bradford County Court |
| | : | of Common Pleas, Criminal |
| COREY MICHAEL STROPE, | : | Division, at No. CP-08-CR-0000536- |
| | : | 2022, entered on January 12, 2023 |
| Appellant | : | |
| | : | ARGUED: October 8, 2025 |

**OPINION**

**JUSTICE DONOHUE**                                              **DECIDED: July 21, 2026**

These cases involve the Commonwealth's interlocutory appeals from orders disposing of pretrial petitions for writs of habeas corpus ("habeas petitions"), which granted relief by quashing all charges brought against Scott L. Sutton ("Sutton") and Corey M. Strope ("Strope") (collectively, "Appellants"). The underlying merits in the claims

of both appeals involve the Commonwealth's reliance on hearsay statements to establish its prima facie case at the preliminary hearings.[1]  Specifically, in both cases the Commonwealth relied on detectives' testimony regarding the out-of-court statements of confidential informants ("CI") to establish the identities of the alleged perpetrators.  The magisterial district judges found that the Commonwealth had established its burden of establishing prima facie cases at the preliminary hearings.  The defendants filed pre-trial habeas petitions in the court of common pleas in their respective cases.  The court of common pleas granted habeas relief in both cases, and the Commonwealth appealed.  The court of common pleas' orders from which the Commonwealth appealed to the Superior Court were not final and not otherwise appealable under the laws of this Commonwealth.  Thus, the Superior Court did not have jurisdiction to consider these cases.  Due to our intermediate appellate court's lack of jurisdiction, the Superior Court's orders "must be vacated and [these] appeal[s] must be quashed."  *McCutcheon v. Phila. Elec. Co.*, 788 A.2d 345, 346 (Pa. 2002).

---

[1]  "At the preliminary hearing, the issuing authority shall determine from the evidence presented whether there is a prima facie case that (1) an offense has been committed and (2) the defendant has committed it."  Pa.R.Crim.P. 542(D).  "Hearsay as provided by law shall be considered by the issuing authority in determining whether a prima facie case has been established."  Pa.R.Crim.P. 542(E).  Hearsay evidence is "sufficient to establish any element of an offense, including, but not limited to those requiring proof of the ownership of, non-permitted use of, damage to, or value of property."  *Id.*  We have recently concluded that the language of this rule does not mean that the Commonwealth can rely exclusively on the use of evidence that would be deemed inadmissible at trial pursuant to the rule against at hearsay.  *Commonwealth v. McClelland*, 233 A.3d 717, 735 (Pa. 2020); *see also Commonwealth v. Harris*, 315 A.3d 26 (Pa. 2024) ("*Harris II*") (holding that "the Commonwealth at a preliminary hearing is required to produce some non-hearsay or admissible hearsay evidence to sustain its prima facie burden as to the defendant's identity").

# I. Procedural Background[2]

In February 2022, Detectives from the Bradford County Drug Taskforce launched a series of controlled buys[3] in a large-scale sting operation known as "Operation Jet Sweep." The Detectives relied on CIs to approach and purchase drugs from certain individuals, including Appellants. No law enforcement officers witnessed an exchange of drugs for money in either incident. Appellants are raising the same challenge to the Commonwealth's reliance on law enforcement hearsay testimony to establish identity.

## Sutton

In August 2022, Sutton was arrested and charged with two counts of delivery of controlled substances.[4] At his October 14, 2022 preliminary hearing, the Commonwealth offered the testimony of a detective who was a member of the Bradford County Drug Taskforce. Memorandum Opinion, 2/8/2023, at 1-2. The CI was not made available for testimony at the preliminary hearing. *Id.* At the conclusion of the preliminary hearing, Sutton's defense counsel moved to dismiss the charges on the basis that the Commonwealth had relied entirely on inadmissible hearsay to establish its prima facie case in identifying Sutton as the drug dealer in the two controlled buys. The magisterial district judge denied the motion, concluding that the Commonwealth had presented prima facie evidence as to each element of the crimes charged. Accordingly, he bound over all charges for trial.

---

[2] Because we are not resolving this case on the merits of the Appellants' claims, any factual information pertinent to those claims will be limited. However, the procedural background of both cases are unique in certain respects, and thus we will set forth a separate background for each case herein.

[3] This involves purchases of controlled substances by CIs using pre-recorded money while under the supervision of law enforcement.

[4] 35 P.S §§ 780-113(a)(30), (a)(16).

On December 2, 2022, defense counsel filed an omnibus pretrial motion. That motion included a habeas petition seeking dismissal of all charges[5] because the Commonwealth presented insufficient evidence to establish a prima facie case of the drug dealer's identity having relied solely on inadmissible hearsay evidence via the detective's testimony. In the alternative, the defense requested that the CI's identity be disclosed, contending that this would be essential information to prepare Sutton's defense.

The trial court found that it was required to quash the charges filed against Sutton because there was a lack of admissible direct evidence as to the identity of the drug dealer. In arriving at this conclusion, the trial court looked to the Superior Court's decision in *Commonwealth v. Harris*, 269 A.3d 534 (Pa. Super. 2022) (holding that the Commonwealth is precluded "from relying on hearsay alone at a preliminary hearing to establish a prima facie case that the defendant committed a crime") ("*Harris I*"), *affirmed by Commonwealth v. Harris*, 315 A.3d 26 (Pa. 2024) ("*Harris II*").[6] On that basis, the trial court quashed the charges. Order, 2/8/2023 (Sutton) ("The charges in the above are hereby quashed without prejudice. Defendant is discharged."). The Commonwealth appealed to the Superior Court, and the trial court ordered the Commonwealth to file a concise statement of errors pursuant to Pennsylvania Rule of Appellate Procedure 1925(b) ("Rule 1925(b) Statement"). Order, 3/10/2023, at 1. The order also advised the Commonwealth that failure to comply would result in waiver "of all objections to the order, ruling, or other matter complained of." *Id.* The Commonwealth did not comply, nor did it seek an extension. Instead, four months later, the Commonwealth wrote a letter to the

---

[5] A pre-trial habeas petition is the "appropriate procedural means by which the accused may challenge the sufficiency of the Commonwealth's evidence at the pre-trial stage[.]" *Commonwealth v. Huggins*, 836 A.2d 862, 864 n.2 (Pa. 2003).

[6] *Harris I* was pending in this Court pursuant to a grant of allowance of appeal when the trial court issued its decision.

Superior Court's prothonotary, in which it admitted its failure to file a Rule 1925(b) statement, and it asked the Superior Court to not deem all issues waived. Commonwealth's Letter to Superior Court Prothonotary, 7/27/2023. While there is no formal indication in the record of a response from the court, the Superior Court obviously ignored the procedural defect and accepted the matter for review.

Prior to addressing the merits, the Superior Court issued a rule to show cause so the Commonwealth could demonstrate "why the instant appeal should not be quashed as taken from an unappealable interlocutory order[,]" given that dismissal of a case for failure to establish a prima facie case is not final when the prosecution can refile the charges. Superior Court Order, 373 MDA 2023 (citing, inter alia, *Commonwealth v. LaBelle*, 612 A.2d 418, 419 (Pa. 1992)). The Commonwealth issued a response, asserting that an appeal from an order discharging a defendant's habeas petition is treated as final and appealable. Commonwealth's Response to Rule to Show Cause, 373 MDA 2023. Without explanation, the Superior Court found that the Commonwealth satisfactorily established its jurisdiction, and then it discharged the rule to show cause to then review the case on the merits. Order Discharging Rule to Show Cause, 373 MDA 2023.

In its opinion, the Superior Court relied upon its then-recent decision in *Harris I*[7] to resolve both the question of its jurisdiction and the merits. *Commonwealth v. Sutton*, 313

[7] In that case, Harris' victim failed to appear for the first two scheduled preliminary hearings. The Commonwealth proceeded with the testimony of two police officers, including a detective, who described the ballistics evidence he observed at the scene of the shooting. The detective also relayed portions of the victim's hospital statement and identification of Harris as one of his shooters. Harris' counsel repeatedly objected to any mention of the victim's out-of-court statements to no avail. The trial court later quashed all charges, and the Commonwealth appealed. The *Harris I* court affirmed the trial court's order, finding that "there was insufficient evidence to establish a prima facie case as to each element at the preliminary hearing where the Commonwealth relied on hearsay evidence alone to establish that Harris committed the offense." *Harris I*, 269 A.3d at 536.

(continued…)

A.3d 1071, 1072 (Pa. Super. 2024). The intermediate court acknowledged that the Commonwealth's appeal was interlocutory, but it "sua sponte determine[d] that [it] ha[d] jurisdiction[,]" pursuant to its previous decision in *Harris I*. *Sutton*, 313 A.3d at 1074 n.3 (citing *Harris I*, 269 A.3d at 538-39). The Superior Court found "no deficiency in the Commonwealth's evidentiary proffer at [Sutton's] preliminary hearing," and thus it reversed the trial court's order and remanded the matter to the lower court for further proceedings consistent with its decision. *Id.* at 1078.

Sutton appealed the Superior Court's decision, and this Court granted allowance of appeal over the following question:

> Whether this Honorable Court should grant allocat[u]r because the Superior Court's precedent in *Sutton* [ ] erroneously creates an exception under [*Harris II*], which allows for the Commonwealth to prove a prima facie case by establishing identity using only hearsay evidence[ ] if a [CI] is being utilized.

*Commonwealth v. Sutton*, 329 A.3d 1124 (Pa. 2024) (per curiam).

Strope

The Commonwealth charged Strope with two counts of delivery of a controlled substance.[8] At the preliminary hearing, the Commonwealth offered testimony from the detectives. Memorandum Opinion, 1/12/2023, at 2. The CI was not present and did not testify. *Id.* The Commonwealth cited the need to protect the identity of the CI as well as the qualified privilege it possesses in order to protect the CI's identity. *Id.* at 1. Strope

---

Shortly after the Superior Court's decision in *Sutton*, this Court decided *Harris II*. We held that "the Commonwealth at a preliminary hearing is required to produce some non-hearsay or admissible hearsay evidence to sustain its prima facie burden as to the defendant's identity." *Harris II*, 315 A.3d at 37.

[8] 35 P.S §§ 780-113(a)(30), (a)(16).

objected, arguing that the sole evidence identifying Strope as the person that sold the controlled substance was the CI, who was not present. The magisterial district judge overruled the objection and bound over all charges for trial.

Strope filed a pretrial habeas petition, arguing that the Commonwealth did not meet its burden of establishing a prima facie case at the preliminary hearing. On January 6, 2022, the trial court held a hearing for Strope's habeas petition. On January 18, 2023, the trial court granted Strope's habeas petition, quashing the charges without prejudice. Order, 1/18/2023 (Strope) ("The charges in the above are hereby quashed without prejudice. Defendant is discharged."). The Commonwealth appealed and, like in *Sutton*, the Superior Court issued a rule to show cause for the Commonwealth to demonstrate why the appeal should not be quashed as taken from an unappealable interlocutory order. Superior Court Order, 249 MDA 2023. The Commonwealth responded as it did in *Sutton*, and the Superior Court proceeded to review the case on the merits.

In an unpublished memorandum, relying on its decision in *Sutton*, the Superior Court reversed the trial court's decision, finding that the Commonwealth had established a prima facie case at the preliminary hearing. *Commonwealth v. Strope*, 2024 WL 1715348, at *3 (Pa. Super. Apr. 22, 2024). Accordingly, the Superior Court reversed the trial court's decision. Strope filed a timely appeal to this Court, which we granted to address, again, whether the Superior Court's decision in this case and its decision in *Sutton* comports with our decision in *Harris II*. *Commonwealth v. Strope*, 330 A.3d 1251 (Pa. 2024) (per curiam).[9]

---

[9] Specifically, our order granted allocatur of the following issue:

> Does the Superior Court's precedent in *Commonwealth v. Sutton*, 313 A.3d 1071 (Pa. Super. 2024), erroneously create an exception to [*Harris II*] by allowing the Commonwealth to establish a *prima facie* case using only hearsay evidence to

(continued…)

## II. Parties' Arguments[10]

Appellants argue that the Superior Court lacked jurisdiction because the Commonwealth's appeal from court of common pleas' decision was interlocutory. Sutton's Brief at 10-14; Strope's Brief at 12-15. They note that the court of common pleas dismissed all of the charges without prejudice because the Commonwealth failed to establish a prima facie case at the preliminary hearing. Sutton's Brief at 12; Strope's Brief at 12-13. Appellants assert that the appeals of the interlocutory orders to the Superior Court were improper, and that the Commonwealth should have gone through the "re-arrest procedure" set forth in our Rules of Criminal Procedure instead. Sutton's Brief at 12; Strope's Brief at 13. Appellants argue that in *McClelland* and *Harris II*, this Court explained that because the Commonwealth may refile charges when they are quashed without prejudice that any appeal taken from such an order is interlocutory. Sutton's Brief at 13 (citing *McClelland*, 233 A.3d at 736 & n.11; *Harris II*, 315 A.3d at 38 n.11); Strope's Brief at 14 (same). Therefore, they argue that the Superior Court could not have decided the matter without jurisdiction. Sutton's Brief at 13-14; Strope's Brief at 14-15. Accordingly, on this basis they ask that this Court reverse the Superior Court's decision. Sutton's Brief at 14; Strope's Brief at 15.

Separately, Sutton argues that the Commonwealth waived all of its issues by failing to file a Rule 1925(b) Statement. Sutton's Brief at 14. As he notes, when a judge orders a Rule 1925(b) Statement, the rule requires that a party file the statement, and that "issues

---

identify the defendant, where a confidential informant is the declarant?

*Commonwealth v. Strope*, 330 A.3d 1251 (Pa. 2024) (per curiam).

[10] Given that we resolve this matter on jurisdiction, we limit our summary to those arguments. Relatedly, Appellants, represented by the same counsel, have set forth virtually identical arguments on this point. For that reason, we summarize those arguments together, but we expressly highlight when those arguments differ.

not included in the Statement and/or not raised in accordance with the provisions of [Pa.R.A.P. 1925(b)(4)] are waived." *Id.* (citing Pa.R.A.P. 1925(b)(4)(vii)). This rule, he observes, applies to all parties, which includes the Commonwealth in criminal matters. *Id.* Sutton explains that it had twenty-one days, per the lower court's order, to file its Rule 1925(b) Statement or to seek an extension if that deadline could not be met. Instead, the Commonwealth waited four months and sent a letter to the Deputy Prothonotary of the Superior Court to request that the intermediate court overlook waiver of its issues on appeal. *Id.* at 15. Sutton contends that intermediate courts do not have the discretion to permit deviation from the rules and, thus, the Commonwealth's failure to file its Rule 1925 Statement resulted in automatic waiver of any issues it could have raised on appeal. *Id.* at 16.

Notably, the Commonwealth failed to address any of the jurisdictional arguments raised by Appellants in their briefing, and it also did not respond to Sutton's arguments as to waiver. When questioned at oral argument, the Commonwealth conceded that it had the ability to refile the charges and admitted that its appeal to the Superior Court was an appeal of an interlocutory order. Oral Argument, 10/8/2025, at 0:45:41-0:45:44. It did not offer any justification as to why the Superior Court assumed jurisdiction over the case or why it permitted the Commonwealth to proceed without having filed its Rule 1925(b) Statement.[11]

---

[11] The Pennsylvania District Attorneys Association ("PDAA") submitted an amicus brief in the *Sutton* case in support of the Commonwealth. However, like the Commonwealth, the PDAA fails to address the jurisdictional arguments or the waiver argument raised by Sutton. *See generally* PDAA's Amicus Brief at 1-20.

## III.    Analysis

Before we proceed with our substantive analysis concerning jurisdiction, we find that the Commonwealth's failure to file its Rule 1925(b) Statement in its appeal of its prosecution against Sutton is fatal to its resolution on the merits.  The Superior Court should never have addressed the Commonwealth's claims in that case.  The lower court entered an order mandating that the Commonwealth submit its statement of matters complained of on appeal within twenty-one days, pursuant to Rule 1925(b).  Order, 3/10/2023 (Sutton).  Our rules require that a statement be issued within that time, and those "issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived."  Pa.R.A.P. 1925(b)(4)(vii).  We require "strict compliance with Rule 1925(b)[,]" and failure to do so results in waiver. *Commonwealth v. Parrish*, 224 A.3d 682, 700 (Pa. 2020).  In Sutton's case, the Commonwealth failed to file a Rule 1925(b) Statement at all.  It attempted to remedy its error by sending an informal letter four months later "humbly ask[ing]" that the Superior Court Prothonotary not deem the issues waived, because it had raised the same issues in other cases.  Commonwealth's Letter to Superior Court Prothonotary, 7/27/2023.  For reasons inexplicable to this Court, the Superior Court accepted this informal plea.  However, raising issues in a separate case does not excuse the Commonwealth from complying with court orders and our rules of appellate procedure in Sutton's case.  That is simply not how it works.  Accordingly, the Commonwealth waived all issues on its appeal in the Sutton case, and the Superior Court's decision should be reversed on that basis alone.

While we would be remiss if we did not highlight the impropriety of the Superior Court's decision to ignore the Commonwealth's waiver of all issues, we must first address the threshold issue of whether the Superior Court had jurisdiction to address these cases at all. Jurisdiction of an appellate court is a prerequisite to consideration of the merits of an appeal. This rule is universal and applies to the Commonwealth's appeal to the Superior Court of the orders granting habeas relief in these cases.[12] Under Section 704 of the Judicial Code, a defect in the jurisdiction of an appellate court cannot be remediated or ignored when it arises out of "[a]n attempt to take an appeal from an interlocutory appeal which has not been made appealable by law or pursuant to section 702(b) (relating to interlocutory appeals by permission)." 42 Pa.C.S. § 704(a), (b)(2). For the reasons made clear below, that is precisely what is taking place in the instant matters.

Jurisdiction is a threshold question of law that must be answered before we can lawfully review the merits of the parties' claims. Our Constitution provides that our "jurisdiction shall be provided by law[,]" and thus, when the law does not provide for our jurisdiction, we cannot proceed. PA. CONST. art. V, § 2(c). Jurisdiction "is the

---

[12] In two recent cases, this Court has avoided addressing the propriety the Superior Court's jurisdiction in appeals from orders resolving pretrial habeas petitions. In *McClelland*, the Commonwealth as appellee challenged the Superior Court's jurisdiction to consider the lower court's denial of habeas relief. We concluded that because the issue of jurisdiction was not raised in its response to the petition for allowance of appeal there was no impediment to this Court reaching the merits of the issue on appeal. *See McClelland*, 233 A.3d 732 n.8 ("Although the Commonwealth now contests the Superior Court's determination that interlocutory appellate review was appropriate in this case, that conclusion is beyond the scope of the issue upon which allocatur was granted. Thus, we do not consider it."). Our failure to address the issue has perpetuated the error. A few years later in *Harris I*, the Superior Court extensively discussed its jurisdiction over the Commonwealth's appeal of the order granting the defendant's habeas petition, which is discussed later in this opinion. The propriety of jurisdiction was not raised in this Court and we did not address it sua sponte. *See Harris II*, 315 A.3d 26 (considering interlocutory appeal of grant of habeas petition).

indispensable foundation of a court's power to adjudicate the issues in a particular case; thus, our Court will not consider the merits of a judgment of a lower court if that court lacked jurisdiction to render the judgment." *In re J.M.Y.*, 218 A.3d 404, 415 (Pa. 2019). When a "lower court did not address the question of its jurisdiction to consider a petition and proceeded to decide its merits, our Court has the duty to determine whether that court had jurisdiction before deciding issues presented on appeal." *Id.* (citing *In re Petition of Acchione*, 227 A.2d 816 (Pa. 1967)).

The question of appellate jurisdiction is a question of law, and thus our standard of review is de novo, and our scope of review is plenary. *Pa. Mfg. Ass'n Insur. Co. v. Johnson Matthey, Inc.*, 188 A.3d 396, 398 (Pa. 2018) (per curiam). Generally, jurisdiction is understood to mean "the competency of the court to determine controversies of the general class to which the case presented for its consideration belonged,—whether the court had power to enter upon the inquiry, not whether it might ultimately decide that it was unable to grant relief sought in the particular case." *Commonwealth v. Ct. of Common Pleas of Phila. Cnty.*, 485 A.2d 755, 758 (Pa. 1984). The question of an appellate court's jurisdiction "is a threshold issue" to determine whether an appeal is properly before it under the law. *McCutcheon*, 788 A.2d at 349. A court cannot address the merits of a claim if it lacks jurisdiction, and thus such delineations "must be policed by the courts on their own initiative even at the highest level." *Bisher v. Lehigh Valley Health Network, Inc.*, 265 A.3d 383, 400 (Pa. 2021) (citation omitted). When courts lack

jurisdiction, any decision rendered by that court lacking jurisdiction must be stricken as void ab initio.[13]  *Id.* at 400-01.

Under the law, the Superior Court has "exclusive appellate jurisdiction of all appeals from final orders of the courts of common pleas, regardless of the nature of the controversy or the amount involved[.]"  42 Pa.C.S. § 742.  Here, the Commonwealth claimed in both cases that it was appealing from final orders granting the Appellants' habeas petitions.  *See* Superior Court Criminal Docketing Statement, 373 MDA 2023 ("Sutton"), § C (indicating that the order appealed from was a final order, pursuant to Pa.R.A.P. 341); Superior Court Criminal Docketing Statement, 249 MDA 2023 ("Strope"), § C (indicating inconsistently that the order appealed from was both a final order and an appeal pursuant to Pa.R.A.P. 311(d)).[14]  Accordingly, we are concerned with whether the

---

[13]  The phrase "ab initio" means "from the beginning," and thus when a matter is considered void ab initio it signifies that it was void from the beginning.  *Bisher*, 265 A.3d at 400.  In other words, it is treated as never having existed under the law.

[14]  In the Commonwealth's docketing statement in the Strope case, it indicated that it was appealing a pretrial order and that it complied with Pa.R.A.P. 311(d).  Rule 311(d) provides as follows:

> (d) Commonwealth Appeals in Criminal Cases.
>
> In a criminal case, under the circumstances provided by law, the Commonwealth may take an appeal as of right from an order that does not end the entire case where the Commonwealth certifies in the notice of appeal that the order will terminate or substantially handicap the prosecution.

Pa.R.A.P. 311(d).  There is nothing in the record to show that the Commonwealth followed the procedure to certify its appeal pursuant to Rule 311(d).  In fact, in its statement of jurisdiction, the Commonwealth indicated that it was appealing a final order pursuant to 42 Pa.C.S. § 742.  Commonwealth's Superior Court Brief at 1.  Without any indication that it even attempted to comply with Rule 311(d), we must continue to treat the appeal as if it were intended to be an appeal of a final order, as indicated by the Commonwealth. (continued…)

trial court's order may be treated as a final order for purposes of the Commonwealth's appeal to the Superior Court. Generally, we have understood that an order denying or granting a habeas petition to be interlocutory. *McClelland*, 233 A.3d at 732 n.8 ("An order denying or granting a writ of habeas corpus is interlocutory."). If we determine that the appeal is interlocutory and not otherwise authorized by law, then we must conclude that the Superior Court lacked jurisdiction to hear this appeal.

To determine whether an interlocutory order resolving a habeas petition is otherwise appealable under the law, we must begin with a review of our jurisprudence on the appealability of habeas petitions. The right to the protections afforded by writs of habeas corpus "have long been part of our Commonwealth's history." *Commonwealth v. Hess,* 414 A.2d 1043, 1046 (Pa. 1980). Such petitions were "designed to test the legality of the restraints upon an accused's liberty." *Id.* at 1045. The preamble of the Habeas Corpus Act of 1785[15] stated that "personal liberty is a principal blessing derived from free constitutions of government, and certain methods of proceeding should be prescribed, so that all wrongful restraints thereof may be easily and speedily redressed." Act of February 18, 1785, 2 Smith's Laws 275, § 1. Our Charter has continued to recognize that "the privilege of the writ of habeas corpus shall not be suspended, unless when in case of rebellion or invasion the public safety may require it." PA. CONST. art. I, § 14. While the writ of habeas corpus is "simply a mode of procedure, its history is inextricably intertwined with the growth of fundamental rights of personal liberty." *Hess*, 414 A.2d at 1046. The

---

Further, there has been no suggestion from the Commonwealth that its appeal of the pretrial order should be treated otherwise.

[15] Act of February 18, 1785, 2 Smith's Laws 275 ("An Act for the better securing personal liberty, and preventing wrongful imprisonments.").

principle underlying writs of habeas corpus affirms that if "imprisonment cannot be shown to conform with fundamental requirements of law, the individual is entitled to his immediate release." *Id.* Thus, when a criminal defendant believes that the Commonwealth has failed to establish its prima facie case by introducing the minimum of competent evidence,[16] the defendant may submit a pretrial habeas petition to seek the dismissal of the charges and his release from custody based on this purported failure. Such a habeas petition would be filed and resolved before jeopardy could ever attach. *See Commonwealth v. Jones*, 676 A.2d 251, 253 (Pa. Super. 1996) ("Under Pennsylvania law, jeopardy attaches when the jury is sworn or, in a bench trial, when the trial court begins to hear evidence.").

The oldest case relied upon for the proposition that the Commonwealth may appeal an order granting a habeas petition is our 1884 decision in *Doyle v. Commonwealth ex rel. Davis*, 107 Pa. 20 (1884).[17] John Doyle was arrested in Warren County and sentenced by virtue of a contempt order issued by the Court of Common Pleas of Allegheny County. *Id.* at 20. He then filed a habeas petition in the Court of

---

[16] "[A] prima facie case exists when the Commonwealth produces evidence of each of the material elements of the crime charged and establishes probable cause to warrant the belief that the accused committed the offense. Furthermore, the evidence need only be such that, if presented at trial and accepted as true, the judge would be warranted in permitting the case to be decided by the jury." *Commonwealth v. Perez*, 249 A.3d 1092, 1102 (Pa. 2021) (citation and quotations omitted).

[17] *See, e.g.*, *Commonwealth ex rel. Bryant v. Hendrick*, 280 A.2d 110, 112 (Pa. 1971) ("We have ruled that an order entered in a habeas corpus proceeding discharging a prisoner from custody is reviewable on appeal.") (citing *Doyle*, 107 Pa. 20); *Hess*, 414 A.2d at 1047 ("[T]he Commonwealth may appeal from an order discharging a defendant upon a writ of habeas corpus[.]") (citing *Hendrick*, 280 A.2d at 112; *Doyle*, 107 Pa. 20); *Commonwealth v. Merced*, 265 A.3d 786, 790 (Pa. Super. 2021) ("Commonwealth may appeal from an order discharging a defendant upon a Writ of Habeas Corpus[.]") (citing *Hendrick*, 280 A.2d at 112; *Doyle*, 107 Pa. 20).

Common Pleas of Warren County, which ultimately granted Doyle's petition discharging him from custody. *Id.* The Warren County court reasoned that the Allegheny County sheriff arrested Doyle in Warren County for conduct in his official capacity as a court-appointed receiver in Forest County. *Id.* On appeal to this Court, we explained that

> [t]he sentence for contempt by the Common Pleas of Allegheny county was a judgment of said court which, however erroneous it might be, was, until vacated or reversed, binding upon the Common Pleas of Warren county; and that the latter court therefore erred in discharging the prisoner upon habeas corpus, such action being in effect equivalent to setting aside the said judgment and attachment of a court of co-ordinate jurisdiction.

*Id.* Thus, in *Doyle*, the defendant had already been sentenced for contempt, and the grant of habeas relief effectively vacated that decision, despite the contempt order having been issued by a court of coordinate jurisdiction.

Accordingly, *Doyle* was not concerned with the pretrial quashal of criminal charges. Rather, it involved the violation of the coordinate jurisdiction rule, wherein one court vacated the decision of a court of coordinate jurisdiction. *Id.* at 25 ("It is very evident that this is substantially a review and reversal of the judgment on which the writ of attachment was based; and the question is, whether one court can modify or set aside the judgment of another court of co-ordinate jurisdiction."). Therefore, the reason for its appealability becomes apparent, as "[i]t is a matter adjudicated, and it belongs to the very essence of governmental order that it cannot be reviewed except by the court that pronounced it, or by its official superiors." *Id.* (quoting *In re Williamson's Case*, 26 Pa. 9, 9 (1855)).

However, while it is both procedurally and legally distinct, we cannot ignore that the *Doyle* Court still recognized that it had jurisdiction "to hear and determine all, and all manner of pleas, plaints and causes which shall be brought here from any other court of

this Commonwealth by virtue of any writ or process issued by the court or any judge thereof for that purpose, in the manner then practiced and allowed[,]" which would have included habeas petitions. *Id.* at 26. In 1884, the *Doyle* Court would have treated an order discharging a petitioner from custody via a habeas petition as "essentially final," pursuant to its broad statutory authority under the Act of June 16, 1836, P.L. 784, No. 192, § 1.[18]

This statutory scheme evolved over time, eventually authorizing jurisdiction specifically over appeals from habeas petitions. By 1951, our General Assembly enacted legislation that provided:

> From the decision of any judge upon any petition for a writ of habeas corpus, or upon any order made pursuant to a hearing on the writ, **an appeal may be taken as in other cases**. When the basis of the petition is an alleged defect or illegality in a criminal proceeding, the appeal shall be to the court which has appellate jurisdiction in cases involving the crime with which the person imprisoned or detained is charged or of which he has been convicted. In all cases involving the

---

[18] In relevant part, the Act provided:

> That the Supreme court of this commonwealth, shall have power to hear and determine all, and all manner of pleas, plaints, and causes which shall be brought, or removed there from any other court of this commonwealth, by virtue of any writ or process issued by the said court, or any judge thereof; for that purpose, in the manner now practised and allowed,[] to examine and correct all, and all manner of errors of the justices, magistrates, and courts of this commonwealth, in the process, proceedings, judgments and decrees, as well in criminal as in civil pleas or proceedings, and thereupon, to reverse, modify or affirm such judgments and decrees, or proceedings, as the law doth or shall direct; anti generally, to minister justice to all persons, in all matters whatsoever, as fully and amply, to all intents and purposes, as the said court has heretofore had power to do*, under the constitution and laws of this commonwealth.

Act of June 16, 1836, P.L. 784, No. 192, § 1.

custody of minors or of persons alleged to be mentally ill,
appeals shall be to the Superior Court. In all other cases,
appeals shall be to the Supreme Court.

Act of May 25, 1951, P.L. 417, No. 98, § 7 (emphasis added). This statute expressly authorized appellate jurisdiction over appeals from habeas petitions,[19] a statutory principle that this Court continued to recognize in later years. *See Commonwealth ex rel. Fitzpatrick v. Mirarchi*, 392 A.2d 1346, 1348 n.4 (Pa. 1978) (noting that "the Commonwealth had the option of appealing … [the] grant of habeas corpus to the Superior Court" pursuant to the Act of 1951). Despite this apparent statutory authority, and that which existed when *Doyle* was decided, later decisions by this Court relied on *Doyle*'s language regarding appealability of habeas petitions but divorced the principles from its statutory foundations.

For example, nearly one-hundred years later in *Bryant*, two inmates brought habeas petitions asserting that the conditions of their pre-trial detention constituted "cruel and unusual treatment, prohibited by the Eighth Amendment of the United States Constitution." *Bryant*, 280 A.2d at 111. The lower court found that "the prison … was a cruel, degrading and disgusting place" and thus granted their discharge from that particular facility. *Id.* at 111-12. Hendrick, the superintendent of the prison, appealed asserting, inter alia, that relief via a habeas petition was improper. *Id.* at 112. However, prior to addressing that issue, the *Bryant* Court sua sponte raised the issue of jurisdiction. *Id.* Based on its reading of *Doyle*—as opposed to an analysis of existing statutory

---

[19] This statute was amended twenty years later, preserving the jurisdictional authority over habeas petitions, but eliminating the last two sentences of the section involving the Superior Court's jurisdiction over cases involving the custody of minors and the mentally ill, as well as this Court's jurisdiction over all other appeals. Act of June 3, 1971, P.L. 143, § 149.

authority—the *Bryant* Court determined that an appeal from a habeas petition was properly before it. *Id.*

Addressing the merits of Hendrick's argument, the *Bryant* Court explained that "[t]raditionally in Pennsylvania and in many other jurisdictions, the writ of habeas corpus has functioned only to test the legality of the petitioner's commitment and detention." *Id.* Ultimately, its primary holding was "that habeas corpus is available to secure relief from conditions constituting cruel and unusual punishment, even though the detention itself is legal." *Id.* at 113. Thus, the issue was not the appealability of an order quashing criminal charges, but whether a habeas petition was the appropriate vehicle for the inmates' claims. *Id.*

In one of the first cases where this Court actually addressed the appealability of an order quashing criminal charges, we discussed the appropriate remedy when the order the Commonwealth is appealing from is interlocutory. In *In re Riggins*, 254 A.2d 616, 617 (Pa. 1969), Louis Riggins was charged with murder with bail set at $1,000. At the preliminary hearing, the judge ruled that a prima facie case had not been made out and discharged the defendant. The Commonwealth appealed.[20] The Court refused to consider the merits stating that "it is apparent that the appeal must be quashed." *Id.* (citing *McNair's Petition*, 187 A. 498, 501 (Pa. 1936)). The Court explained that the "procedure to be followed" was that "if the Commonwealth deems itself aggrieved by [a magistrate's]

---

[20] The Commonwealth argued that rearrest would have been an appropriate remedy had the order been entered by a magistrate; however, because the order was entered by a common pleas court judge, the Commonwealth asserted that it was not an appropriate remedy. This Court explained that the Commonwealth's characterization of the judge's status was incorrect, because he was not yet a common pleas judge when he entered the relevant order. Nonetheless, the Court found that either judicial status made no difference in its review of the appeal. *Riggins*, 254 A.2d at 617-18 & n.2.

decision [to discharge the defendant] it may bring the matter again before any other officer empowered to hold preliminary hearings." *Riggins*, 254 A.2d at 617. The Court stated that "[i]t [was] clear … that the Commonwealth has not been put out of court, and that the instant appeal is interlocutory." *Id.* Accordingly, we quashed the appeal. *Id.* We continued to recognize this remedy decades after our decision in *Riggins*. *See, e.g.*, *Mirarchi*, 392 A.2d at 1348 (explaining "that re-arrest is the appropriate procedure and the Commonwealth's only recourse where charges are dismissed and the defendant discharged upon a finding of a lack of a prima facie case"); *Commonwealth v. Prado*, 393 A.2d 8, 9 (Pa. 1978) (noting that the orders discharging criminal charges for lack of a prima facie case "[o]rdinarily … are not appealable since the individual is subject to rearrest"); *Commonwealth v. Thorpe*, 701 A.2d 488, 489-90 (Pa. 1997) (noting that "[a]s a general rule, the Commonwealth must be free to present its case again even after it has failed to convince a neutral magistrate that it has a prima facie case[;]" however, the Commonwealth cannot repeatedly rearrest as a means of harassing a defendant).

Shortly after our pronouncement in *Riggins* regarding the Commonwealth's remedy of reinstituting charges, we relied on our then-existing statutory authority concerning habeas petitions to draw a distinction between cases where charges are dismissed at a preliminary hearing and those cases involving pretrial grants of habeas petitions quashing the charges. *Commonwealth v. Hetherington*, 331 A.2d 205, 208-09 (Pa. 1975). [21] The former cases, we explained, are interlocutory because it "is not a final

---

[21] The criminal defendant in *Hetherington* "incorrectly styled his application" as a "motion to quash." *Commonwealth v. Hetherington*, 331 A.2d 205, 209 (Pa. 1975). However, because the substance of the petition was to test the finding of a prima case pretrial, this Court recognized that it was actually a habeas petition.

determination, such as an acquittal, and only entitles the accused to his liberty for the present, leaving him subject to rearrest." *Id.* at 208. The latter we found to be "a proper subject for appellate review" based on our then-existing statutory framework that made habeas petitions "a proper subject for appellate review. Act of May 25, 1951, P.L. 415, [§] 7 as amended, Act of June 3, 1971, [P.L. 143, § 149]." *Id.* at 209.

However, the foundation of these decisions and this Court's jurisdiction over such matters would change shortly after our decision in *Hetherington.* In 1978, the statutory authority expressly conferring jurisdiction over appeals from habeas petitions would be repealed by the Judiciary Act Repealer Act[22] when our General Assembly enacted the Judicial Code. With the adoption of the Judicial Code, new rules controlled the right to appellate review of all judicial orders. These are the same rules guiding our analysis today.

Aside from limited exceptions, appellate courts only have jurisdiction over appeals of final orders. *Commonwealth v. Harris*, 32 A.3d 243, 248 (Pa. 2011); *see also* 42 Pa.C.S. § 5105(a) (There is a right of appeal under this subsection from the final order (including an order defined as a final order by general rule) of every … Court[.]"). This Court, "by general rule," was authorized to define what is a final order. Thus, we have defined a final order as any order that disposes of all claims and all parties. Pa.R.A.P. 341(b)(1). Interlocutory orders that do not end the entire case may also be appealed under circumstances provided by this Court. 42 Pa.C.S. § 5105(c) ("The governing

---

[22] Act of April 28, 1978, P.L. 326 & 344, No. 1978-53.

authority[23] shall be responsible for a continuous review of the operation of section 702(b) (relating to interlocutory appeals by permission)[24] and shall from time to time establish by general rule rights to appeal from such classes of interlocutory orders, if any, from which appeals are regularly permitted pursuant to section 702(b).").  These appealable interlocutory orders are as follows: an order certified by the trial court as final;[25] interlocutory orders appealed as of right;[26] interlocutory appeals by permission;[27] and collateral orders.[28]  Accordingly, if an appeal does not fit within one of these categories, the appellate court does not have jurisdiction to entertain the appeal.

Despite this seismic shift in our rules concerning the appealability of orders, courts addressing the appealability of habeas petitions failed to consider these new rules in their

---

[23] The Judicial Code defines "Governing authority" as "The Supreme Court … [or] any agency or unit of the unified judicial system exercising a power or performing a duty pursuant to section 1721 (relating to delegation of powers)."  42 Pa.C.S. § 102.

[24]  See 42 Pa.C.S. § 702(b) (explaining that an interlocutory order may be appealed when a court is "of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the matter" a court may permit an appeal).

[25] See Pa.R.A.P. 341(c) (stating that the trial "may enter a final order as to one or more but fewer than all of the claims and parties only upon an express determination that an immediate appeal would facilitate resolution of the entire case. Such an order becomes appealable when entered").

[26]  See 42 Pa.C.S. § 702(a) ("An appeal authorized by law from an interlocutory order in a matter shall be taken to the appellate court having jurisdiction of final orders in such matter."); see also Pa.R.A.P. 311 ("Interlocutory Appeals as of Right").

[27]  See Pa.R.A.P. 312 ("Interlocutory Appeals by Permission").

[28]  See Pa.R.A.P. 313(b) ("A collateral order is an order separable from and collateral to the main cause of action where the right involved is too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost.").

jurisdictional analyses. Instead, they would look to the holdings of cases resolved under the since-repealed statutory framework concerning habeas petitions, and, in so doing, would perpetuate the error of relying on the language of these cases regarding the appealability of habeas petitions but divorced this language from its statutory foundations.

For example, in *Hess,* we asserted that the "rules of appealability are not reciprocal" when it comes to the appeal of orders granting habeas petitions. *Hess*, 414 A.2d at 1047. Accordingly, we held that "the Commonwealth may appeal from an order discharging a defendant upon a writ of habeas corpus[.]" *Id.* (citing *Bryant*, 280 A.2d 110; *Doyle*, 107 Pa. 20). On the other hand, we reasoned, that "the defendant may not immediately appeal from the denial of his pretrial application habeas corpus relief." *Id.* (citing *See, e.g.*, *Commonwealth ex rel. Fisher v. Stitzel*, 211 A.2d 457, 459 (Pa. 1965); *Commonwealth ex rel. Bittner v. Price*, 235 A.2d 357, 358 (Pa. 1967); *Commonwealth ex rel. Gordy v. Lyons*, 252 A.2d 197, 198 (Pa. 1969); *Commonwealth v. Myers*, 322 A.2d 131, 132 (Pa. 1974); *Commonwealth ex rel. Tiller v. Dye*, 110 A.2d 748 (Pa. Super. 1955)).[29] The *Hess* Court made no attempt to review any of these cases to justify its conclusion that there exists a lack of reciprocity between appeals filed by a defendant or

---

[29] Given that these cases cited by the *Hess* Court were all decided when the previous statutory framework expressly authorized this Court's jurisdiction over appeals from habeas petitions without a distinction based on party, it is unclear why these cases were resolved on this basis. No detailed explanation is provided in any of these cases. However, in at least two instances, there were Justices who wrote to disagree, explaining that this Court did have jurisdiction to hear the cases, pursuant to the then-existing statutory authority. *See Myers*, 322 A.2d at 133 ("[T]his Court should reach the merits of appellant's claim, raised by a petition for habeas corpus … See Act of May 25, 1951, P.L. 415, § 7, as amended, 12 P.S. § 1907 (Supp.1974).") (Roberts & Manderino, JJ., dissenting); *Price*, 235 A.2d at 358 ("I do not agree than an appeal from the denial of a habeas corpus petition is interlocutory and therefore must be quashed.") (Roberts, J., concurring).

the Commonwealth of an order granting or dismissing a habeas petition. Instead, it merely cites to these cases in holding that "it is firmly established" that this is how our rules work. *Id.* at 1048. However, by attributing holdings to *Doyle* and *Bryant* that were never actually held in those cases, and by ignoring the difference in the jurisdictional laws that existed when those cases were decided, the *Hess* Court's analysis is severely flawed.[30] In fact, it is this same exact flaw that has been perpetuated by the Superior Court which has brought this issue to the forefront in the instant matters.

In *Sutton*, the Superior Court acknowledged that the Commonwealth's appeal was interlocutory, but the court "sua sponte determine[d] that [it] ha[d] jurisdiction[,]" pursuant to its previous decision in *Harris I*. *Sutton*, 313 A.3d at 1074 n.3 (citing *Harris I*, 269 A.3d at 538-39). In *Strope*, the Superior Court explained that "[a]lthough the court dismissed the charges without prejudice," its jurisdiction was proper pursuant to its decisions in *Harris I* and *Merced*. *Strope*, 2024 WL 1715348, at *1 n.2 (citing *Merced*, 265 A.3d at 790-91; *Harris I*, 269 A.3d at 538-39). As will be discussed herein, the basis for the Superior Court to establish jurisdiction in these cases, *Harris I* and *Merced*, engaged in the same analytical error as this Court in *Hess* by relying on language from inapt cases operating under an entirely different statutory framework.

In *Harris I*, the Superior Court merely relied upon its decision in *Merced*, wherein it offered a more comprehensive approach to the jurisdictional question of a pretrial order dismissing charges on a habeas petition. *Harris I*, 269 A.3d at 539. The panel recognized

---

[30] Despite its flawed analysis, the *Hess* Court ultimately arrived at the correct result. Under the controlling rules at the time of the defendant's appeal of the order denying his habeas petition in *Hess*, the Superior Court did not have jurisdiction to entertain that interlocutory appeal. *Hess*, 414 A.2d at 1047-48.

that *Merced* found that it had jurisdiction and that because it was "a published decision that answers the jurisdictional question" it constituted "binding precedential authority." *Id.* (citing *Commonwealth v. Beck*, 78 A.3d 656, 659 (Pa. Super. 2013) ("A panel [of this Court] is not empowered to overrule another panel of the Superior Court.")).

Accordingly, we look to *Merced*, wherein the Superior Court, faced with the Commonwealth's appeal from a partial grant of a defendant's pretrial habeas petition, questioned its own jurisdiction and set forth to "examine the history of habeas corpus." *Merced*, 265 A.3d at 789. In so doing, the *Merced* court traced our common law tradition through our early statutory schemes related to habeas petitions. *Id.* at 789-91. Based on its review, it stated that it was well-established that while the Commonwealth could appeal from an order discharging a defendant based upon a habeas petition, the defendant could not appeal its denial. *Id.* at 790 (citing *Bryant*, 280 A.2d 110; *Doyle*, 107 Pa. 20). Further, it relied on our previous decision in *Karetny*, which will be discussed in greater detail below, for the proposition that "the Commonwealth may appeal from a trial court's order dismissing a felony charge based on a pretrial petition for Writ of Habeas Corpus." *Id.* (quoting *Commonwealth v. Karetny*, 880 A.2d 505, 513 (Pa. 2005)).

Although the *Merced* court likely had jurisdiction,[31] it did not identify the proper basis and, in doing so, it misconstrued much of this Court's case law to reach that

---

[31] The circumstances before the *Merced* court would have established jurisdiction under our instant analysis. The Commonwealth in *Merced* appealed pursuant to Pa.R.A.P 311(d). *Merced*, 265 A.3d at 789. However, there was no statement of jurisdiction attached to its brief indicating its appeal was filed on that basis. *Id.* Merced conceded that the court had jurisdiction on the basis that the prosecution would have been substantially handicapped, under Rule 311(d). *Id.* Although jurisdiction "may not be conferred by consent of the parties[,]" there was a separate basis for the *Merced* court's jurisdiction. *In re Admin. Order No. 1-MD-2003*, 936 A.2d 1, 5 (Pa. 2007). In *Merced*, the (continued…)

conclusion. The *Harris I* court perpetuated that error by relying on *Merced*'s analysis. The intermediate court's reliance on *Bryant* and *Doyle* in reaching that conclusion is inapt. As previously discussed, neither *Doyle* nor *Bryant* involved the pretrial quashal of charges. More importantly, the Court at the time *Doyle* and *Bryant* were decided had express statutory authority to accept such matters on appeal. Due to changes in our law, these cases are no longer germane to our current jurisdictional review. We must address appellate jurisdiction under the statutory paradigm that exists today, *see* supra pp. 21-22.

To begin, we must determine the nature of the orders appealed to the Superior Court in the instant matters. Generally, we have understood an order denying or granting a habeas petition to be interlocutory. *McClelland*, 233 A.3d at 732 n.8. This has been our understanding with any order that results in the dismissal of all charges due to the Commonwealth's failure to establish a prima facie case at a preliminary hearing. *Commonwealth v. LaBelle*, 612 A.2d 418 (Pa. 1992). In *LaBelle*, we reasserted our general rule that an order dismissing a case for failure to establish a prima facie case is not final. "[T]he failure to make a prima facie case has been treated as an interlocutory matter, for at the time it is determined that the prosecution's evidence is deficient, jeopardy has not attached and the state is not out of court because of the adverse determination. It may add to its case and resubmit the case for prosecution." *Id.* at 420.

We have reaffirmed our holding from *Riggins* "that re-arrest is the appropriate procedure and the Commonwealth's only recourse where charges are dismissed and the

_____

trial court dismissed some counts, but not others. "[A]n order quashing a charge is unquestionably 'final' as to that charge because a trial **on the remaining charges** would permanently preclude trial on the quashed charge." *Karetny*, 880 A.2d at 512-13 (emphasis added); *see also* infra pp. 28-29. Accordingly, the *Merced* court had jurisdiction to entertain the appeal, though not for the reasons stated in its analysis.

defendant discharged upon a finding of a lack of a prima facie case[.]" *Mirarchi*, 392 A.2d at 1348. Our procedures for reinstituting charges following the dismissal of charges have since been codified in our Rules of Criminal Procedure. According to Pennsylvania Rule of Criminal Procedure 544(A): "[w]hen charges are dismissed or withdrawn at, or prior to, a preliminary hearing, or when a grand jury declines to indict and the complaint is dismissed, the attorney for the Commonwealth may reinstitute the charges by approving, in writing, the re-filing of a complaint with the issuing authority who dismissed or permitted the withdrawal of the charges." Pa.R.Crim.P 544(A).

The reinstitution of charges remains the appropriate remedy for the Commonwealth when all charges have been dismissed because double jeopardy has not been implicated. "Under Pennsylvania law, jeopardy attaches when the jury is sworn or, in a bench trial, when the trial court begins to hear evidence." *Commonwealth v. Jones*, 676 A.2d 251, 253 (Pa. Super. 1996). Accordingly, whether the charges are dismissed before the magistrate or by a common pleas judge on a pretrial habeas petition, jeopardy has not attached.

Without the express authorization of appellate jurisdiction over a grant of a habeas petition, an order granting relief pursuant to a habeas petition is no longer distinct from any other interlocutory order. *See McClelland*, 233 A.3d at 732 n.8 ("An order denying or granting a writ of habeas corpus is interlocutory."); *LaBelle*, 612 A.2d at 419-20 (noting that the "failure to make a prima facie case" at a preliminary hearing "has been treated as an interlocutory matter" because "the state is not out of court because of the adverse determination"). Jeopardy has not attached under such circumstances. And the Commonwealth is not precluded from reinstituting the charges when the charges are

dismissed without prejudice. This is true so long as the statute of limitations has not expired. *Thorpe*, 701 A.2d at 489 ("As a general matter, a defendant may be rearrested after charges have been dismissed at a preliminary hearing so long as the statute of limitations has not expired."); *see also* Pa.R.Crim.P. 544, cmt. ("[T]he charges must be reinstituted prior to the expiration of the applicable statute(s) of limitations.").

There are, however, circumstances in which the Commonwealth can appeal an order granting a habeas petition. Where appropriate, the Commonwealth could follow the procedure set forth in our rules for seeking an interlocutory appeal as of right. Under Pennsylvania Rule of Appellate Procedure 311(d), the Commonwealth can certify in its notice of appeal that the interlocutory order must be challenged on the basis that it would otherwise "terminate or substantially handicap the prosecution." Pa.R.A.P. 311(d). Relatedly, there are circumstances where the dismissal of some charges and not others would handicap the prosecution in such a way that would make an appeal from a grant of habeas relief appropriate. That was precisely what took place in *Karetny*.

In *Karetny*, after numerous charges were held over for trial in the Philadelphia Court of Common Pleas, the defendants filed motions to quash the charges. *Karetny*, 880 A.2d at 511. Ultimately, the court of common pleas granted the motions to quash two sets of charges. The Commonwealth appealed, arguing that its appeal was properly within this Court's jurisdiction, because if "the Commonwealth were forced to wait to seek review [until after trial], it could be unable to try the defendants" on the quashed charges under double jeopardy principles. *Id.* at 512. We agreed, explaining "that an order quashing a charge is unquestionably 'final' as to that charge because a trial **on the remaining charges** would permanently preclude trial on the quashed charge." *Karetny*,

880 A.2d at 512-13 (emphasis added).  Thus, when a case proceeds to trial after some charges are quashed, jeopardy attaches to all of the original charges once the trial begins, creating a constitutional bar against reinstituting the quashed charges.

There are other extraordinary circumstances when an appeal of a similar order is appropriate.  For instance, in *Prado*, the defendant was arrested and charged with homicide and other related charges.  *Prado*, 393 A.2d at 9.  Following a preliminary hearing, the Commonwealth failed to meet its burden and Prado was discharged.  *Id.*  A warrant for his rearrest was issued one month later.  *Id.*  Following the second preliminary hearing, the Commonwealth again could not establish a prima facie case.  *Id.*  The Commonwealth attempted to file another petition to rearrest Prado, but because no additional evidence was presented, the petition was denied.  *Id.*  The Commonwealth appealed the order denying that petition.  *Id.*  While we recognized that "[o]rdinarily, orders such as the ones before us are not appealable since the individual is subject to rearrest[,]" under Philadelphia criminal rules[32] the "only judge empowered to conduct a preliminary hearing for a homicide case refused to grant the petition to rearrest[.]"  *Id.* at 10.  Under those circumstances, we understood the prosecution to be "effectively barred from rearresting" Prado.  *Id.*  Because there was no other recourse for the Commonwealth, we found that a denial of such an order to be "final" and therefore "subject to appellate review[.]"  *Id.*

To summarize, there is no discernible basis under our current law to authorize an appeal from an interlocutory order granting a habeas petition that dismisses **all** of the

---

[32]  Specifically, at the time, "[u]nder Philadelphia Criminal Rules 500(H) and 605, … only the assigned Motions Court Judge may review a request for rearrest in a homicide case." *Prado*, 393 A.2d at 9-10.

charges when the Commonwealth has the ability to reinstitute those charges.[33] There exist limited circumstances when an appeal will lie from a pretrial grant of a habeas petition, such as when the Commonwealth is precluded from reinstituting the charges. Accordingly, our jurisdictional analysis does not apply when: the lower court's order dismisses the charges **with prejudice**; the statute of limitations would otherwise expire; the Commonwealth appeals, pursuant to Pa.R.A.P. 311(d), and properly certifies that the order "will terminate or substantially handicap the prosecution[;]" or the Commonwealth's attempt to rearrest is otherwise blocked. Moreover, if **some** but **not all** of the charges are quashed, the Commonwealth would be permitted to appeal, as it would otherwise risk attaching jeopardy to those charges by proceeding to trial on the remaining charges, thereby permanently precluding prosecution of the quashed charges. *Karetny*, 880 A.2d at 512-13. With that framework established, we proceed with the instant matters.

Here, it is undisputed that the court of common pleas quashed **all** of the Appellants' charges **without prejudice**. Order, 2/8/2023 (Sutton) ("The charges in the above are hereby quashed without prejudice. Defendant is discharged."); Order, 1/18/2023 (Strope) ("The charges in the above are hereby quashed without prejudice. Defendant is discharged."). With respect to the statute of limitations, Sutton and Strope were both

---

[33] Even though petitions for rearrest are the appropriate redress for the Commonwealth, that does not mean that this Court condones unlimited attempts to rearrest a criminal defendant. *See, e.g.*, *Prado*, 393 A.2d at 11 ("We must concur with the court's refusal to allow the prosecution without any assertion of additional evidence a 'third bite at the apple.'"); *Thorpe*, 701 A.2d at 490-91 ("[T]he Commonwealth arrested the defendant three times over a period of nearly two years, imprisoned him for five months, was unprepared to proceed at the time of at least five preliminary hearings, and when it finally did proceed, failed to present a prima facie case. It now seeks to arrest the defendant a fourth time and to present its case again … . The Commonwealth's conduct, as a matter of law, constitutes impermissible harassment.").

charged with delivery of a controlled substance which is subject to a five-year statute of limitation from the date the crime was committed. 42 Pa.C.S. § 5552(b)(2). Both sets of alleged crimes were purportedly committed in early 2022. Accordingly, there is nothing precluding the Commonwealth from reinstituting the charges and rearresting the Appellants to proceed with new preliminary hearings and the opportunity to produce additional evidence in an attempt to establish a prima facie case. Under these circumstances, this remains the Commonwealth's "only recourse where charges are dismissed and the defendant discharged upon a finding of a lack of a prima facie case[.]" *Mirarchi*, 392 A.2d at 1348.

Rather than proceed with reinstituting those charges, the Commonwealth appealed the orders. In both matters, the Commonwealth asserted that it was appealing from a final order. There is no dispute that the orders themselves were interlocutory. *See, e.g., Sutton*, 313 A.3d at 1074 n.3 (noting that the case involved "the Commonwealth's interlocutory appeal from a pretrial order"); *Strope*, 2024 WL 1715348, at *1 n.2 (acknowledging the interlocutory nature of the lower court's order by noting that "the court dismissed the charges without prejudice"). Based on the review of our case law and the current state of the law regarding jurisdiction, there was no basis for the Superior Court to assume appellate jurisdiction over the Commonwealth's appeals.

## IV.    Conclusion

The orders from which the Commonwealth appealed were not final orders within the meaning of Pa.R.A.P. 341, and thus the Superior Court did not have appellate jurisdiction. 42 Pa.C.S. § 742. Without jurisdiction to hear the appeals, its orders are void ab initio. *McCutcheon*, 788 A.2d at 346. Accordingly, the Superior Court's orders are vacated and these appeals are quashed.

Chief Justice Todd and Justices Dougherty, Wecht, Brobson and McCaffery join the opinion.

Justice Brobson files a concurring opinion.

Justice Mundy files a dissenting opinion.